**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **RANDY STEVENS, individually and on** | § | |
| **behalf of all others similarly situated,** | § | |
| | § | CASE NO. _____ |
| **PLAINTIFF** | § | |
| **v.** | § | |
| | § | JUDGE _____ |
| **AT&T, INC.,** | § | |
| | § | |
| **DEFENDANT** | § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Randy Stevens ("Plaintiff" or "Stevens"), individually and on behalf of all others similarly situated, complains of the actions of Defendant AT&T, Inc. ("AT&T"), and respectfully shows the following:

## NATURE OF THE CASE

**1.** This is a nationwide class action against AT&T for engaging in unfair, unconscionable and deceptive billing practices.

**2.** Without securing Stevens' authorization and/or notifying Stevens, AT&T unilaterally switched Stevens to its electronic billing system—pursuant to which Stevens would receive his monthly bills and/or notice that his monthly bills were available online via his email address on file with AT&T rather than via the United States mail. For the next four months, AT&T failed to send any bills to Stevens—electronically or via the United States mail—which resulted in late payments by Stevens (through no fault of his own). AT&T, in turn, assessed Stevens' late payment charges. Stevens paid the charges under AT&T's threat to disconnect his telephone, refer his account to a collection agency and/or notify credit reporting agencies of his alleged delinquency.

3.      Stevens brings this action as a class action, on behalf of himself and all others throughout the United States (the "Class Members") who (i) received the same shabby treatment by AT&T, (ii) paid unwarranted late payment charges resulting from AT&T's billing errors under threats to disconnect their telephones, refer their accounts to collection agencies and/or notify the national credit reporting agencies of their alleged delinquencies and/or (iii) actually had their telephone service disconnected, accounts referred to collection agencies and/or their alleged delinquencies reported to the national credit reporting agencies.

4.      Stevens, on behalf of himself and the Class Members, seeks actual damages, equitable relief, pre- and post-judgment interest, attorneys' fees, litigation expenses and court costs.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to (i) 47 U.S.C. § 207 (Federal Communications Act), (ii) 28 U.S.C. § 1331 (federal question), and (iii) 28 U.S.C. § 1332(d)(2) (CAFA) because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is diverse from AT&T's citizenship, and (c) the matter in controversy exceeds $5,000,000 USD exclusive of interest and costs.  This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. This Court has personal jurisdiction over AT&T because at all relevant times, AT&T conducted (and continues to conduct) substantial business in the Eastern District of Texas.

6.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391(b); (c) because a substantial part of the events giving rise to this action occurred in the Eastern District of Texas and AT&T resides, is located, can be found and/or conducts substantial business in the Eastern District of Texas.

**PARTIES**

      7.      Plaintiff Stevens is a citizen and resident of Beaumont, Texas.  AT&T wrongfully charged Stevens late payment charges and, under AT&T's threat to disconnect his telephone, refer his account to a collection agency and/or notify the nationwide credit reporting agencies of his alleged delinquency, Stevens paid AT&T the late payment charges, in full.

      8.      Defendant AT&T is a Delaware corporation with its principal place of business in Dallas, Texas.  AT&T may be served with Summons and a copy of Plaintiff's Original Class Action Complaint and Jury Demand by serving its registered agent for service of process, CT Corporation Systems, 350 North St. Paul Street, Dallas, Texas 75201.

**FACTS**

      9.      Until the facts giving rise to this case occurred, Stevens was a long time AT&T residential telephone service customer.

      10.      Up through and including November 2010, AT&T sent Stevens' monthly bills in paper form to his home address via the United States mail.

      11.      During December 2010, and without authorization or notification, AT&T unilaterally switched Stevens to its electronic billing system—pursuant to which Stevens would receive his monthly bills and/or notice that his monthly bills were available online via his email address on file with AT&T, rather than receiving his monthly bills in paper form via the United States mail.

      12.      At that time, Stevens' email address on file with AT&T was [stevensrandy@sbcglobal.net](mailto:stevensrandy@sbcglobal.net), an email account hosted by AT&T.

      13.      In fact, AT&T periodically sent Stevens promotional materials via the [stevensrandy@sbcglobal.net](mailto:stevensrandy@sbcglobal.net) email address.

**14.**     Even though AT&T unilaterally switched Stevens to its electronic billing system, AT&T failed to send Stevens his bills for December 2010, January 2011 and February 2011— electronically or in paper form via the United States mail.

**15.**     Because AT&T failed to send bills to Stevens for December 2010, January 2011 and February 2011 in any format, they were not (and could not have been) timely paid.

**16.**     As a result, on March 2, 2011, AT&T sent Stevens a notice threatening to disconnect his telephone, refer his account to a collection agency and inflict other dire consequences if his outstanding balance was not paid immediately.

**17.**     Upon receiving AT&T's notice, Stevens called AT&T's customer service department to inquire about the situation.

**18.**     During the conversation, the AT&T customer service representative told Stevens that the reason he no longer received his monthly bills via the United States mail was because Stevens had allegedly requested to be placed on the AT&T electronic billing system.

**19.**     By her words, the AT&T customer service representative strongly suggested to Stevens that if he did not immediately pay the outstanding balance, AT&T would disconnect his telephone, refer his account to a collection agency and/or notify the nationwide credit reporting agencies of his alleged delinquency.

**20.**     Stevens assured the customer service representative that he never requested to be switched to the AT&T electronic billing system, he was never notified by AT&T that he had been switched and, in any case, AT&T did not send him the bills for December 2010, January 2011 and February 2011—electronically or via the United States mail.

**21.**     The AT&T customer service representative did not accept Stevens' explanation, remained adamant and argued with him.

4

22.     At the conclusion of the call, Stevens requested that he be removed from the AT&T electronic billing system, which the AT&T customer service representative agreed to do.

23.     After the call with the AT&T customer service representative, Stevens paid his bills for December 2010, January 2011 and February 2011, in full, including $12.88 of late payment charges wrongfully assessed by AT&T on Stevens' unpaid balance which, in fact, resulted from AT&T's unfair, unconscionable and deceptive billing practices.

24.     Immediately thereafter, Stevens cancelled his telephone service with AT&T and moved his service to a different carrier.

25.     Adding insult to injury, after Stevens cancelled his service, AT&T sent Stevens information about his email accounts via his email address (stevensrandy@sbcglobal.net) that AT&T hosted and had on file.

26.     Thereafter, and contrary to Stevens' request and the fact that his email address (stevensrandy@sbcglobal.net) was hosted by and clearly on file with AT&T, AT&T did not send Stevens' March 2011 bill in paper form via the United States mail and/or electronically.

27.     As a result, the March 2011 bill was not (and could not have been) timely paid.

28.     Thus, on April 20, 2011, AT&T sent Stevens a collection letter threatening to refer the unpaid bill to a collection agency and report the alleged delinquency to the nationwide credit reporting agencies.

29.     Stevens called the AT&T customer service department again, ascertained the outstanding balance and thereafter paid AT&T, in full, including an additional $6.42 of late payment charges.

30.     On information and belief, AT&T, without authorization or notice, has unilaterally, uniformly and systematically switched hundreds of thousands (if not millions) of

current and former customers to its electronic billing system, failed to send such customers' monthly bills via electronic mail, and wrongfully charged and collected late payment charges under threat of disconnecting their telephones, referring their accounts to collection agencies and/or notifying the nationwide credit reporting agencies about their alleged delinquencies.

31.     On further information and belief, AT&T, in fact, disconnected some of the Class Members' telephones, referred their accounts to collection agencies and/or notified the nationwide credit reporting agencies about their alleged delinquencies.  This case has resulted.

## CLASS ACTION ALLEGATIONS

32.     The preceding factual statements and allegations are incorporated herein by reference.

33.     Plaintiff brings this action as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent a Class consisting of all current or former AT&T customers who AT&T unilaterally switched to its electronic billing system, did not timely receive electronic bills via their email addresses on file with AT&T, and were charged and paid late payment charges, from January 1, 2010 to the present.  Excluded from the Class are AT&T and its officers, directors, agents, representatives and/or employees, the Court and Court personnel.

34.     This action is properly brought as a class action because Class Members are so numerous that joinder of all of them is impracticable.  Class members are widely dispersed throughout the United States.  While the exact number of Class Members is unknown to Plaintiff at this time, the Class Members may easily be identified from AT&T's records.  On information and belief, there are hundreds of thousands—if not millions—of putative Class Members.

35.     This action also is properly brought as a class action because certain common questions of law and/or fact exist as to all Class Members that predominate over any questions solely affecting individual Class Members including, *inter alia*:

(i)      Whether AT&T's wrongful acts violated § 201 of the Federal Communications Act, 47 U.S.C. § 201?

(ii)     Whether AT&T's wrongful acts constitute breach of an actual or, in the alternative, implied contract?

(iii)    Whether Plaintiff and Class Members are entitled to compensation under the equitable doctrine of money had and received?

(iv)     Whether Plaintiff and Class Members are entitled to compensation under the equitable doctrine of unjust enrichment?

(v)      Whether Plaintiff and Class Members are entitled to damages and, if so, the appropriate type and amount?

36.     The only question affecting individual Class Members is the precise amount to which each Class Member is entitled as compensation for AT&T's unlawful, unconscionable and deceptive acts and practices.  Such amounts are reflected on Plaintiff's and Class Members' monthly bills, which are maintained by AT&T in its computerized records.

37.     Plaintiff's claims are typical of Class Members' claims since their experiences at issue in this case are identical (or virtually identical) to each other.

38.     The Class Members' interests will be fairly and adequately protected by Plaintiff. Plaintiff's interests are consistent with those of Class Members.  Plaintiff and Class Members are represented by experienced and able counsel knowledgeable about class action litigation, complex commercial litigation and financial and accounting matters.

39.     Plaintiff's interests are not antagonistic to, or in conflict with, the interests he seeks to represent.  Plaintiff knows of no difficulty that would be encountered in the management of this action as a class action.

40.     Class certification, therefore, is appropriate pursuant to FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.  In the absence of a class action, AT&T will retain the benefits of its wrongdoing despite its serious violations of the law.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

## COUNT I

## VIOLATION OF § 201 OF THE FEDERAL COMMUNICATIONS ACT

42.     The preceding factual statements and allegations are incorporated herein by reference.

43.     At all relevant times, the Federal Communications Act of 1934, 47 U.S.C. § 201 *et seq.* ("FCA") was in full force and effect.

44.     Congress enacted the FCA for the purpose of regulating all forms of electronic communications, including communications by telephone, radio, cable and wire.

45.     The FCA specifically protects telecommunication customers from unfair, unjust, unconscionable and deceptive billing acts and practices; to wit:

> All charges, practices, classifications, and regulations for and in connection with such [wire or radio] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful … .

47 U.S.C. § 201(b).

46.     AT&T, a common carrier engaged in interstate or foreign communications by wire or radio, is subject to the FCA and, more specifically, subject to 47 U.S.C. § 201(b).

47.     The AT&T late payment charges described above are charges and/or practices in connection with providing communication services that are subject to Section 201(b) of the FCA (47 U.S.C. § 201(b)).

48.     Section 201(b) of the FCA (47 U.S.C. § 201(b)) requires all charges, practices, classifications and regulations for and in connection with providing communication services shall be just and reasonable.

49.     The AT&T late payment charges described above are unjust, unreasonable and/or unlawful in violation of 47 U.S.C. § 201(b).

50.     As a direct and/or proximate result of AT&T's unilateral, uniform, systematic and ongoing violations of 47 U.S.C. § 201(b), Plaintiff and Class Members have been (and continue to be) damaged in the form of, *inter alia*, (i) the late payment charges wrongfully assessed by AT&T and paid by Plaintiff and Class Members to AT&T under AT&T's threats to disconnect their telephone service, refer their accounts to collection agencies and/or notify nationwide credit reporting agencies about their alleged delinquencies, (ii) the time, resources and hassle unnecessarily spent communicating with AT&T in an attempt to rectify the situation and/or (iii) the time, resources and hassle unnecessarily spent communicating with collection agencies and/or credit reporting agencies—for all of which Plaintiff and Class Members are entitled to compensation pursuant to 47 U.S.C. § 206.

## COUNT II

## BREACH OF ACTUAL OR IMPLIED CONTRACT

51.     The preceding factual statements and allegations are incorporated herein by reference.

52.     Based on the Parties' acts and conduct, Plaintiff and Class Members, on the one hand, and AT&T, on the other hand, intended to form and, in fact formed, actual or, in the alternative, implied contracts with each other.  Pursuant to these contracts, AT&T agreed to, *inter alia*, provide communication services to Plaintiff and Class Members and send monthly bills for such services in the form and manner designated by Plaintiff and Class Members. Pursuant to these contracts, Plaintiff and Class Members agreed to, *inter alia*, timely pay AT&T for the communication services and, failing timely payment, pay AT&T late payment charges.

53.     AT&T breached its contracts with Plaintiff and Class Members by, *inter alia,* unilaterally, uniformly and systematically switching hundreds of thousands (if not millions) of its current and former customers to its electronic billing system (without authorization or notice), failing to send such customers monthly bills via electronic mail (and/or at all), and wrongfully charging and collecting late payment charges from such customers under threat of disconnecting their telephone service, referring their accounts to collection agencies and/or notifying the nationwide credit reporting agencies of their alleged delinquencies.  AT&T is not allowed to charge and collect late payment charges that directly result from its own unfair, unconscionable and deceptive billing practices.

54.     As a direct and/or proximate result of AT&T's unilateral, uniform, systematic and ongoing breaches of its contracts with Plaintiff and Class Members, they have been damaged in the form of, *inter alia*, (i) the late payment charges wrongfully assessed by AT&T and paid by Plaintiff and Class Members to AT&T under AT&T's threats to disconnect their telephone service, refer their accounts to collection agencies and/or notify nationwide credit reporting agencies about their alleged delinquencies, (ii) the time, resources and hassle unnecessarily spent communicating with AT&T in an attempt to rectify the situation and/or (iii) the time, resources

and hassle unnecessarily spent communicating with collection agencies and/or credit reporting agencies—for all of which Plaintiff and Class Members are entitled to compensation.

**COUNT III**

**MONEY HAD AND RECEIVED**

**55.**    The preceding factual statements and allegations are incorporated herein by reference.

**56.**    By its above-described wrongful acts, AT&T holds money—*i.e.*, the wrongfully charged and collected late payment charges—that, in equity and good conscience, belongs to Plaintiff and Class Members.  AT&T should be compelled to refund such wrongfully charged late payment charges paid by Plaintiff and Class Members under the equitable doctrine of money had and received.

**COUNT IV**

**UNJUST ENRICHMENT**

**57.**    The preceding factual statements and allegations are incorporated herein by reference.

**58.**    By its above-described wrongful acts, AT&T has been (and continues to be) unjustly enriched by, *inter alia*, (i) the late payment charges wrongfully assessed by AT&T and paid by Plaintiff and Class Members to AT&T under AT&T's threats to disconnect their telephone service, refer their accounts to collection agencies and/or notify nationwide credit reporting agencies about their alleged delinquencies, and (ii) AT&T's corresponding return on investment on the amounts wrongfully taken.  Accordingly, Plaintiff, on behalf of himself and the Class Members, seeks to impose a constructive trust over (and recover) all amounts by which AT&T has been unjustly enriched.

## RELIEF REQUESTED

**59.**     The preceding factual statements and allegations are incorporated herein by reference.

**60.     ACTUAL DAMAGES.**  As a direct and/or proximate result of AT&T unilaterally, uniformly and systematically switching Plaintiff and Class Members to its electronic billing system and failing to send Plaintiff and Class Members their monthly bills via electronic mail, Plaintiff and Class Members have been (and continue to be) damaged in the form of, *inter alia*, (i) the late payment charges wrongfully assessed by AT&T and paid by Plaintiff and Class Members to AT&T under AT&T's threats to disconnect their telephone service, refer their accounts to collection agencies and/or notify nationwide credit reporting agencies about their alleged delinquencies, (ii) the time, resources and hassle unnecessarily spent communicating with AT&T in an attempt to rectify the situation and/or (iii) the time, resources and hassle unnecessarily spent communicating with collection agencies and/or credit reporting agencies— for all of which Plaintiff and Class Members are entitled to compensation.  All of the damages sustained by Plaintiff and Class Members were reasonably foreseeable by AT&T and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiff's and Class Members' claims have been performed and/or occurred.

**61.     ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**  Plaintiff and Class Members also are entitled to recover their attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, *inter alia*, 47 U.S.C. § 206 and Section 38 of the Texas Civil Practice and Remedies Code.  All conditions precedent to Plaintiff's and Class Members' claims for relief have been performed and/or occurred.

**WHEREFORE,** Plaintiff, on behalf of himself and the Class Members, respectfully requests that (i) AT&T be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiff be designated the Class Representative, and (iv) Plaintiff's counsel be appointed as Class counsel.  Plaintiff, on behalf of himself and the Class Members, further requests that upon final trial or hearing, judgment be awarded against AT&T, in favor of Plaintiff and the Class Members, for:

(i)      actual damages in an amount to be determined by the trier of fact;

(ii)     equitable relief as set forth above;

(iii)    pre- and post-judgment interest at the highest applicable legal rates;

(iii)    attorneys' fees and litigation expenses incurred through the trial and any appeals;

(v)      costs of suit; and

(vi)     such other and further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.

Respectfully submitted,

By:_____

Richard L. Coffman
**THE COFFMAN LAW FIRM**
The First City Building
505 Orleans St., Ste. 505
Beaumont, TX 77701
(409) 833-7700
(866) 835-8250 FAX
rc@cofflaw.com

Mitchell A. Toups
**WELLER, GREEN, TOUPS &**
   **TERRELL, LLP**
P.O. Box 350
Beaumont, TX 77704
(409) 838-0101
(409) 832-8577 FAX
matoups@wgttlaw.com

**ATTORNEYS-IN-CHARGE  FOR  PLAINTIFF
AND THE PUTATIVE CLASS**