IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| RANDY STEVENS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>AT&T INC., and SOUTHWESTERN BELL TELEPHONE COMPANY,<br><br>    Defendants. | Case No. 1:11-cv-00313-MAC |

**DEFENDANTS' MOTION TO DISMISS OR STAY CLAIMS SUBJECT TO MANDATORY ARBITRATION**

  Defendants AT&T Inc. and Southwestern Bell Telephone Company hereby respectfully move to compel plaintiff Randy Stevens to arbitrate his dispute, to the extent it involves billing for interstate long distance and high-speed Internet services, in accordance with Stevens' agreements to arbitrate such disputes. Stevens purchased, among other things, interstate long distance service from SBC Long Distance, LLC d/b/a AT&T Long Distance ("AT&T LD"), and high-speed Internet service from SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T IS"), both subsidiaries of AT&T Inc. He now contends that the late payment charges he was billed for these services were unreasonable and should be refunded. When Stevens obtained interstate long distance and Internet services, he agreed to arbitrate any disputes he may have concerning them on an individual basis. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires him to fulfill his commitment.

  Stevens' claims against AT&T Inc. (which is a holding company that does not provide any communications services to customers, including Stevens) and Southwestern Bell Telephone Company (a subsidiary of AT&T Inc. that provides telecommunications services in Texas,

1

Missouri, Oklahoma, Kansas, and Arkansas) relating to late payment charges for the interstate long distance and Internet services provided by AT&T LD and AT&T IS are covered by his arbitration agreements with those AT&T affiliates. As another federal court recently held in construing an arbitration provision contained in a related AT&T IS agreement, because plaintiffs' claims against other AT&T affiliates were "intertwined with, subject to, and dependent upon," the terms that govern their Internet service, those affiliate defendants were entitled to "invoke and enforce . . . the arbitration clauses" as well. *Hancock v. AT&T Co.*, 2011 WL 3628885, at *2 (W.D. Okla. Aug. 11, 2011). *See also Hill v. GE Power Systems, Inc.*, 282 F.3d 343, 347 (5th Cir. 2002) (the FAA may apply to "nonsignatories who were affiliates of a signatory corporation," such as where "the claims against the affiliates were based entirely on rights arising from the contract containing the arbitration provision" and "litigation of the claims against the nonsignatory affiliates would have adversely affected the signatory's right to arbitration"); *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000) (nonsignatory can invoke arbitration clause "'when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract'" (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). Accordingly, the Court should compel Stevens to arbitrate his claims to the extent they involve interstate long distance and Internet services provided by AT&T LD and AT&T IS, and dismiss Stevens' claims to the extent they involve those services.[1]

---

[1] In urging this motion, Defendants do not waive any of their other defenses, including but not limited to: (1) that AT&T Inc. is not a proper party because it is a holding company that provided no goods or services to Plaintiff of any kind, nor did it bill or collect from Plaintiff any of the challenged charges, and (2) Southwestern Bell Telephone Company is not a proper party to the extent Plaintiff's claims relate to services provided by other subsidiaries of AT&T Inc.

# BACKGROUND

**A.     Stevens Agrees to Arbitrate Disputes Regarding Long Distance and Internet Services.**

Stevens is an AT&T LD and AT&T IS customer who resides in Texas.  Stevens was an AT&T LD customer since before 2009, until he cancelled service in March of 2011.  Williams Dec. ¶ 4.  In order to obtain service, Stevens agreed to be bound by the Residential Services Agreement ("RSA") containing the terms and conditions upon which AT&T LD provided interstate long distance services.  *Id.* ¶¶ 6-7.  Since at least July of 2009, the RSA has contained an arbitration provision that requires the parties to "arbitrate all disputes and claims" between them, "based in whole or in part upon" the services provided by AT&T, on an individual basis.  *Id.* at Ex. 2 § 9, Ex. 4 § 9.

In addition, according to company records, on August 3, 2003, Stevens activated his high-speed Internet service with AT&T IS.  Frias Dec. ¶ 5.  In order to activate that service, Stevens was required to complete an online registration process, during which he was asked to review AT&T IS's terms of service and check an "I agree" box on his computer screen.  *Id*. ¶ 6.  Without checking the box indicating his acceptance of the terms, Stevens would have been unable to complete the activation process and begin using his Internet service.  *Id*. Those terms of service provided that AT&T IS could change its terms of service from time to time, and that a customer would accept the new terms by continuing to use AT&T IS's Internet service.  *Id.* ¶ 8. AT&T IS subsequently revised its terms of service, which since October of 2008 have contained an arbitration provision that requires the parties to "arbitrate all disputes and claims" between them, "based in whole or in part upon" the Internet services, on an individual basis.  *Id.* at Ex. 3 § 13.  In September of 2008, Plaintiff was notified of this change, and was notified that he would

signify his consent to the arbitration provision if he continued purchasing AT&T IS's Internet services.  *Id.* ¶ 9 & Ex. 2.

### B.     Applicable Arbitration Provisions.

The arbitration provisions in the interstate long distance and Internet service contracts have several features that make arbitration simple and advantageous for customers to use. Indeed, in the course of holding that the materially similar arbitration provision utilized by AT&T Inc.'s wireless affiliate, AT&T Mobility LLC, must be enforced not withstanding its ban on class-wide arbitration, the Supreme Court endorsed the observations of the district court and the Ninth Circuit that "aggrieved customers who filed [arbitration] claims would be 'essentially guarantee[d]' to be made whole" and plaintiffs are "*better off* under their arbitration agreement with AT&T [Mobility] than they would have been as participants in a class action." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1741, 1753 (2011).  These customer-friendly provisions include:

- **Cost-free arbitration:**  "AT&T [LD and IS] will pay all AAA [American Arbitration Association] filing, administration, and arbitrator fees" unless the arbitrator determines that the claim is "frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[2]

- **$10,000 minimum award if arbitral award exceeds the last settlement offer:**  If the arbitrator awards a customer more than the "last written settlement offer made before an arbitrator was selected," the Company must pay the customer the greater of the award of $10,000;

---

[2] Even if an arbitrator concludes that a customer's claim is frivolous, if the claim is for less than $10,000, the AAA's consumer arbitration rules would cap the amount of costs the customer would have to pay at $125.  *See* AAA, *Consumer-Related Disputes Supplementary Procedures* § C-8, *available at* http://www.adr.org/sp.asp?id=22014.

- **Double attorneys' fees available:**  If the arbitrator awards the customer more than the Company's last settlement offer, the Company will "pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses" that "attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration";[3]

- **AT&T LD and IS disclaim right to seek attorneys' fees:**  "Although under some laws AT&T [LD and IS] may have a right to an award of attorneys' fees and expenses if it prevails in arbitration, AT&T [LD and IS] agrees that it will not seek such an award" from the customer;

- **Small claims court option:**  Either party may bring a claim in small claims court;

- **Full remedies available:**  The arbitrator may award the customer any form of individual relief, including declaratory and injunctive relief, that a court could award;

- **No confidentiality requirement:**  The customer and his or her attorney need not keep the arbitration confidential;

- **Flexible consumer procedures:**  Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer-Related Disputes, which the AAA designed with consumers in mind;

- **Conveniently located hearing:**  Arbitration will take place "in the county . . . of [the customer's] billing address"; and

- **Convenient in-person, telephonic, or "desk" hearings:**  For claims of $10,000 or less, customers have the exclusive right to choose whether the arbitrator will conduct an in-

---

[3] This opportunity to recover double attorneys' fees "supplements any right to attorneys' fees and expenses [that the customer] may have under applicable law." Frias Dec. Ex. 4 § 13(e); Williams Dec. Ex. 4 § 9(e). Thus, even if an arbitrator were to award a customer less than the Company's last settlement offer, the customer would be entitled to an attorneys' fee award to the same extent as if the claim had been brought in court.

person hearing, a hearing by telephone, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."[4]

Frias Dec. Ex. 4 § 13; Williams Dec. Ex. 4 § 9.

### C.  Dispute Resolution Under the Arbitration Provision.

AT&T LD and AT&T IS have tailored the dispute-resolution process to the needs of their customers. The procedures create powerful incentives for AT&T LD and AT&T IS to resolve the vast majority of disputes to customers' satisfaction without the need to invoke the formal arbitration process.

It is only if a customer cannot resolve his or her dispute informally through the Company's customer-service representative that the arbitration provision comes directly into play. The first step of the formal dispute-resolution process is for the customer to provide notice of the dispute. Frias Dec. Ex. 4 § 13(b); Williams Dec. Ex. 4 § 9(b). That is as simple as mailing a letter or filling out and mailing the one-page Notice of Dispute form that is posted at www.att.com/residentialarbitration. If the Company and the customer cannot resolve the dispute within 30 days, the customer may begin the formal arbitration process. Frias Dec. Ex. 4 § 13(b); Williams Dec. Ex. 4 § 9(b). To do so, the customer need only fill out a short Arbitration Initiation form and send copies to the AAA and to the Company. Customers may obtain a copy of the form from the AAA's web site at www.adr.org or use the simplified form posted at www.att.com/residentialarbitration.

---

[4] Under the AAA rules that would otherwise apply, either party may insist on a hearing in cases involving claims of $10,000 or less. *See* AAA, *Consumer-Related Disputes Supplementary Procedures* §§ C-5, C-6, *available at* http://www.adr.org/sp.asp?id=22014. For claims exceeding $10,000, a hearing would be held unless both parties agree to forgo it. *Id.*

### D. Stevens Filed Lawsuit Notwithstanding Agreement to Arbitrate.

Despite agreeing to arbitrate his disputes regarding interstate long distance and Internet services, Stevens filed this lawsuit on June 25, 2011. He alleges that Defendants "unilaterally" switched Stevens to electronic, paperless billing, that Defendants failed thereafter to send monthly bills to Stevens, and that Defendants subsequently demanded, and Stevens paid, late payment charges. *See* Complaint ¶¶ 2-3. Stevens seeks a refund of these late payment charges, which he alleges are "unjust and unreasonable." Complaint ¶ 5.

### ARGUMENT

### I. THE FEDERAL ARBITRATION ACT REQUIRES ENFORCEMENT OF STEVENS' ARBITRATION AGREEMENTS.

Stevens agreed to arbitrate "all disputes and claims" relating to his interstate long distance and Internet services. Frias Dec. Ex. 4 § 13(a); Williams Dec. Ex. 4 § 9(a). Under the FAA, those arbitration agreements must be enforced.

It is "beyond dispute that the FAA was designed to promote arbitration." *Concepcion*, 131 S. Ct. at 1749. The centerpiece of the FAA is Section 2, which mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 4 also emphasize the duty of courts to compel arbitration "in accordance with the terms of the [arbitration] agreement." *Id.* §§ 3-4. As the Supreme Court has explained, "[t]he overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. And this "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 1749 (internal quotation marks omitted). Accordingly, "questions of

arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

In view of these principles, the FAA requires enforcement of Stevens' arbitration agreements with AT&T LD and AT&T IS. The FAA applies if the arbitration agreement is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: (i) the arbitration agreements are in writing, and (ii) contracts for interstate long distance services and Internet services involve interstate commerce. *See, e.g.*, *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("the Internet is generally an instrumentality of interstate commerce"); *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006) ("the Internet is an instrumentality and channel of interstate commerce."). Indeed, the arbitration provisions themselves specify that the contracts "evidence[] a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision." Frias Dec. Ex. 4 § 13(a); Williams Dec. Ex. 4 § 9(a).

Moreover, Stevens' claims unquestionably are covered by his agreements to arbitrate "all disputes and claims" regarding his interstate long distance and Internet services. *Id.* As a result, pursuant to the FAA the Court must compel arbitration and stay the lawsuit to the extent Stevens' claims concern charges for interstate long distance and Internet services. *See* 9 U.S.C. § 3.

## CONCLUSION

For the foregoing reasons, the Court should enter an order granting Defendants' motion to compel arbitration and dismissing, or in the alternative staying, this action to the extent it involves interstate long distance and Internet services provided to Plaintiff.

Dated: November 1, 2011                     Respectfully submitted,

/s/ Michael J. Truncale
Michael J. Truncale
Texas Bar No. 20258125
Christopher A. McKinney
Texas Bar No. 24044544
Orgain, Bell & Tucker, LLP
470 Orleans St.
P.O. Box 1741
Beaumont, Texas 77704
(409) 838-6412
(409) 838-6959 - Facsimile

Theodore A. Livingston (admitted *pro hac vice*)
Hans J. Germann (admitted *pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606-4637
(312) 782-0600
(312) 701-7711 – Facsimile

Paul A. Drummond
Texas Bar No. 06138300
AT&T SERVICES, INC.
1010 N. St. Mary's St., 14th Fl.
San Antonio, Texas 78215
(210) 351-4830
(210 886-2127 – Facsimile

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I, Michael J. Truncale, hereby certify that on November 1, 2011, I electronically filed the foregoing Motion to Dismiss or Stay Claims Subject to Mandatory Arbitration by using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.


                        /s/  Michael J. Truncale